IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**LEOPOLDO PEREZ-ORTEGA,**

    **Petitioner,**

v.                                                                 Case No. 1:13-cv-28901

**BART MASTERS, WARDEN, et al.,**

    **Respondents.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Petitioner's Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2241 (ECF No. 1). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED,** and that this action be **DISMISSED**, with prejudice, and removed from the docket of the Court.

**I.    Relevant History**

Petitioner is currently incarcerated at FCI McDowell based upon a 2011 conviction in the United States District Court for the Southern District of Texas for illegally reentering the United States after having been deported to Mexico following the

1

commission of an aggravated felony. (ECF No. 7-1). Petitioner files this habeas action seeking correction of a purportedly inaccurate record in his central inmate file. (ECF No. 1 at 2). According to Petitioner, the Bureau of Prisons ("BOP") has incorrectly assigned him a Public Safety Factor ("PSF") designation as a sex offender, even though Petitioner has never been convicted of such a crime. Petitioner alleges that the designation was given in retaliation for him exercising his due process rights, and the BOP's refusal to correct the error is a continuation of the retaliatory action. Petitioner claims that the PSF designation "adversely affects" him, although he does not specify the nature of the unfavorable consequences. He further complains that the BOP failed to respond to his last grievance on the matter, thus denying him "meaningful access to the courts." (*Id.*). He asserts violations of his rights under the Fifth and Sixth Amendments to the United States Constitution. Petitioner requests appointment of counsel, an order compelling the BOP to correct his record and remove the PSF designation, and an order instructing the BOP to "cease and desist all retaliation" against Petitioner. (*Id.* at 8).

In opposition to the petition, Respondents make several arguments. First, they contend that Petitioner's claims are not cognizable under § 2241, because even a ruling in Petitioner's favor would not affect the duration of his confinement. (ECF No. 7 at 3). Respondents contend that § 2241 is reserved for challenges to the execution of a sentence, while Petitioner's action focuses on an alleged violation of the Privacy Act.[1] Second, Respondents assert that Petitioner's allegations of retaliation and constitutional violations are not properly brought in a habeas action as they implicate the conditions of his confinement, rather than the execution of his sentence. (*Id.* at 5). Finally, Respondents

---

[1] Title 5 U.S.C. § 522a. Respondents point out that a claim under the Privacy Act must be asserted against the involved agency. Therefore, the Warden of FCI McDowell is not a proper party in this case.

argue that if Petitioner's alleged "adverse" effect of the designation refers to an erroneous classification score or housing assignment, Petitioner fails to state a valid claim for relief, as he had no constitutionally protected interest in a particular custody classification or housing assignment. (*Id.* at 6). Respondents request that the Court summarily dismiss the petition.

## II. BOP's Security Classification and Custody Designation

The BOP is responsible for determining the classification and placement of prisoners, 18 U.S.C. § 3621, and has promulgated policies and procedures to guide it in carrying out that mandate.[2] Policy Statement ("PS") 5100.08 addresses inmate security classifications and custody designations, including the use of PSFs. Public Safety Factors[3] are designations that account for "certain demonstrated behaviors which require increased security measures to ensure the protection of society." PS 5100.08, Chapter 2, Page 4. Nine PSFs identify inmates "who are not appropriate for placement at an institution which would permit inmate access to the community (i.e., MINIMUM security)." *Id.* PSF F, which signifies a sex offender, is applied to inmates "whose behavior in the current term of confinement or prior history" includes one or more of six listed elements. *Id.* at Chapter 5, page 8. Inmates with a PSF F designation must be housed in at least a Low security level institution.[4] A conviction on a sex offense is not required to apply PSF F to an inmate, as long as the inmate's presentence investigation report or other

---

[2] The BOP's Program Statements are found at www.bop.gov/Resources/policy_and_form.jsp

[3] The PSFs are identified by letter and include: A-None; B-disruptive group (males only); C-greatest severity offense (males only); F-sex offender; G-threat to government official; H-deportable alien; I-sentence length (males only); K-violent behavior (females only); L-serious escape; M-prison disturbance; N-juvenile violence; O-serious telephone abuse.

[4] There are five security levels: Minimum, Low, Medium, High, and Administrative. PS 5100.08, Chapter 1, Page 2.

3

official documentation clearly indicates the presence of one or more of the listed elements in the current term of confinement or prior criminal history. *Id.* Of relevance to this case, the elements include:

> (1) Engaging in sexual contact with another person without obtaining permission to do so (forcible rape, sexual assault, or sexual battery);
>
> (4) Any sexual act or contact not identified above that is aggressive or abusive in nature (e.g., rape by instrument, encouraging the use of a minor for prostitution purposes, incest, etc.).
>
> (5) Attempts are to be treated as if the sexual act or contact was completed.

*Id.* According to the affidavit of Sharon Wahl, paralegal at FCI McDowell, Petitioner received the PSF F designation based upon his presentence investigation report, which stated that Petitioner had previously been convicted of an assault involving a kidnapping and a threat to kill the victim if she did not remove her pants. (ECF No. 7-1 at 3). Due to the aggressive and abusive sexual nature of the assault, PSF F was marked on Petitioner's Security/Designation data sheet maintained in his central file. (ECF No. 7-1).

Of note, Petitioner does not dispute the veracity of Ms. Wahl's affidavit, nor her rendition of the factual circumstances underlying the prior assault conviction. Also of some significance, in addition to the application of PSF F, the BOP applied PSF H to Petitioner, indicating that he was a deportable alien. (ECF No. 7-1 at 5-6). Application of PSF H likewise requires that, at a minimum, the inmate be housed in a Low security level institution. PS 5100.08, Chapter 5, Page 9.

### III. Discussion

As explained below, the undersigned **FINDS** that Petitioner's claims are not cognizable under 28 U.S.C. § 2241, and for that reason, they should be dismissed. Furthermore, the Court need not construe the petition as a civil rights complaint made

4

pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971), given that Petitioner's claims are otherwise without merit.

### A. Petitioner's Challenge to his PSF Designation is not Cognizable Under § 2241

As Respondents point out, to state a claim under § 2241, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3). Generally, a petition filed under § 2241 challenges the fact or duration of a sentence, but not the conditions of confinement. *See Sappleton v. Hogsten,* Civil Action No. 1:11-00552, 2014 WL 2565547, at *2 (S.D.W.Va. Jun. 6, 2014) (citing *Preiser v. Rodriquez,* 411 U.S. 475, 499-500 (1973)). While a habeas petition is appropriate when a prisoner seeks a "quantum change" in his level of custody, when he only "seeks a different program, location, or environment, his challenge is to the conditions of his confinement rather than the fact of his confinement and his remedy is under civil rights law." *Id.* (quoting *Campbell v. Deboo,* 2011 WL 1694454, at *2 (N.D.W.Va. May 4, 2011)).

Petitioner does not explicitly state the benefit he hopes to gain by forcing the BOP to remove the PSF F designation from his central file. Nevertheless, removal of the designation clearly will not affect the fact or duration of Petitioner's sentence, and certainly will not result in a speedier release from prison. Consequently, a § 2241 petition is not the proper vehicle for Petitioner's claims. *See Blanton v. Warden, U.S.P. Lee,* No. 7:10-cv-00552, 2011 WL 1226010, at *2 (W.D.Va. Mar. 30, 2011); *also Powell v. Krueger,* Case No. 15-1186, 2015 WL 4572661, at *1 (C.D. Ill. July 29, 2015) (finding that "[a]lthough the Seventh Circuit does not appear to have directly addressed this issue, other Circuits have held that a habeas corpus petition is not the proper vehicle to make a

5

claim regarding challenges to PSF designations," and collecting cases); *and Wilson v. Zickefoose,* Civil Action No. 10–2783 (NLH), 2010 WL 5317333, at *2 (D. N.J. Dec. 20, 2010) (noting that in the Third Circuit, a federal prisoner's challenge to a security classification does not consitute a challenge to the execution of a sentence cognizable under § 2241*) (citing Burnam v. Marberry,* 313 Fed.Appx. 455, 456, 2009 WL 449151, 1 n.2 (3d Cir. 2009)).

### B. Petitioner's Privacy Act Claim Has No Merit

Even if the Court were inclined to construe the habeas petition as a civil rights complaint, the undersigned **FINDS** that Petitioner would still fail to state a supportable cause of action. Under the Privacy Act, a federal agency, like the BOP, is required to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 522a(e)(5). The Privacy Act also allows an individual to access records pertaining to the individual, and to request an amendment to any record that the individual believes is incorrect. 5 U.S.C. § 522a(d)(2). If an agency fails to comply with the requirements of the Privacy Act and "consequently a determination is made which is adverse to the individual," the affected individual may bring a civil action against the agency. 5 U.S.C. § 522a(g)(1).

However, "[t]he Privacy Act allows an agency to promulgate regulations that exempt certain records within the agency from certain provisions of the Privacy Act." *Blanton,* 2011 WL 1226010, at *3 (citing 5 U.S.C. § 522a(j)). The BOP took advantage of this provision and exempted its central file records from the amendment and civil remedies sections of the Privacy Act. *See* 28 C.F.R. § 16.97; *also Grayson v. Federal*

6

*Bureau of Prisons,* Civil Action No. 5:11cv2, 2011 WL 7154384, at *4 (N.D.W.Va. July 22, 2011).[5] Therefore, Petitioner is precluded from asserting a claim under the Privacy Act for the BOP's application of the PSF F designation and for the agency's refusal to remove it.

In any case, the affidavit of Ms. Wahl and attached exhibits essentially nullify Petitioner's claims. First, these unchallenged documents establish that Petitioner was given the PSF F designation based upon a presentence investigation report, which verified that Petitioner had previously committed an assault involving aggressive and abusive nonconsensual sexual contact or attempted contact. Accordingly, he deserved the PSF F designation he received. Contrary to Petitioner's assertion, the PSF F designation can be applied even in the absence of a conviction. PS 5100.08, Chapter 5, Page 8. Second, Petitioner already had a PSF H designation as a deportable alien, which required his placement in the same minimum custody level as was required by a PSF F designation, and similarly limited his ability to participate in certain programs offered by the BOP. *See Rodebaugh v. Haynes,* No. 2:13–CV–00011–DPM–BD, 2013 WL 1003676, at *2 (E.D. Ark. Feb. 12, 2013). Therefore, Petitioner is hard-pressed to demonstrate that he suffered any improper or unfair adverse effect related to his PSF F designation.

### C. Petitioner Fails to State Viable Constitutional Claims

Petitioner next asserts that the PSF F designation violates his rights under the Fifth and Sixth Amendments to the Constitution. He also claims retaliation and denial of access to courts. Petitioner's last two claims can be disposed of on the basis that his petition lacks factual grounds sufficient to maintain them. *See Shaw v. Hallman,* Civil Action No. 9:14–

---

[5] Petitioner relies upon a D.C. Circuit case, *Toolasprashad v. Bureau of Prisons,* 286 F.3d 576 (D.D.C. 2002), for his Privacy Act claim. However, *Toolasprashad* was decided before the BOP exempted its inmate files from the amendment and damages provisions of the Privacy Act and, therefore, is no longer controlling law in that Circuit. *See Earle v. Holder,* 815 F.Supp.2d 176, 183 n. 5 (D.D.C. 2011) (recognizing the intervening exemption promulgated by the BOP).

cv–00741–RBH 2015 WL 4661852 (D.S.C. Aug. 5, 2015) (holding that even a *pro se* plaintiff must state more than conclusory allegations to support a retaliation claim, and collecting cases). Petitioner contends that Respondents retaliated against him for exercising his due process right to file grievances. He claims that the retaliatory acts included applying a PSF F designation, failing to respond to his last grievance over the PSF designation, and failing to correct the record. As previously stated, the record is accurate based upon the presentence investigation report; accordingly, neither the designation, nor the BOP's refusal to change the record, constitutes retaliation. In addition, considering that Petitioner's grievances were in relation to the PSF F designation, the designation must have come first. Thus, the designation simply could not have been applied in retaliation for the grievances.

Lastly, failing to respond to a grievance does not rise to the level of a retaliatory act; particularly, when the same unfounded grievance apparently was filed several times. (ECF No. 1 at 4, 7). In order for an inmate "to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory act itself must violate such a right." *Daye v. Rubenstein,* 417 F.App'x. 317, 319 (4th Cir.2011) (citing *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994)). Inmates do not have a constitutional right to access the BOP's grievance process. *Id.* It follows, then, that the inmate has no constitutional right to receive a response to a grievance. *See Freeman v. Cartledge,* No. 9:14–cv–3339–DCN, 2015 WL 3965822, at *5 (D.S.C. Jun. 30, 2015) (holding that "even if corrections officials fail to properly apply an inmate grievance procedure, such failure is not actionable under 42 U.S.C. § 1983"). Therefore, the act of not responding to the grievance does not, itself, violate a constitutionally protected right.

8

The Fourth Circuit has stated that "[a] plaintiff seeking to recover for First Amendment retaliation must allege that (1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct." *Constantine v. Rectors and Visitors of George Mason Un.,* 411 F.3d 474, 499 (4th Cir. 2005). After allegedly filing multiple grievances complaining about the same PSF designation, Petitioner proceeded to file the instant habeas action. Although Petitioner's ability to file this action is not dispositive of the matter, "for purposes of a First Amendment retaliation claim ..., a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Constantine,* 411 F.3d at 500. While Petitioner was arguably frustrated or inconvenienced by the lack of a response to his grievance, the BOP's act of not responding was not likely to deter Petitioner or any inmate from exercising his First Amendment rights. Thus, assuming for argument's sake that Petitioner engaged in protected speech when he filed the grievance form, the undersigned **FINDS** that the BOP's act of not responding is simply insufficient to state a claim of retaliation. *See Booker v. South Carolina Dept. of Corr.,* 583 F.App'x 43, 44 (4th Cir. 2014) (holding that "*de minimus*" inconvenience does not "adversely affect" an individual's First Amendment rights).

With respect to Petitioner's "denial of meaningful access to courts" claim, he again alleges no facts to provide the framework for such a claim. Petitioner essentially argues that the BOP's failure to respond to Petitioner's last grievance was retaliatory and interfered with his access to the judicial system because, without the response, he was unable to exhaust his administrative remedies. Given that administrative remedies may

9

be considered exhausted when a prison fails to respond to an inmate's grievance within a reasonable time frame, *Scott v. Clarke,* 64 F.Supp.3d 813, 831 (W.D.Va. 2014), Petitioner's contention is clearly baseless. *See McKenzie v. United States,* Civil Action No. 1:11–0387, 2014 WL 2481903 (S.D.W.Va. Jun. 3, 2014) (citing *Woltz v. Scarantino,* 2012 WL 851118, *1 (S.D.W.Va. March 13, 2012). Furthermore, for the same reasons discussed above, not responding to a grievance simply does not constitute retaliatory action.[6] Accordingly, the undersigned **FINDS** that the BOP's PSF designation, its refusal to change the designation, and its alleged failure to adequately answer Petitioner's grievance are insufficient grounds upon which to state a claim of retaliation.

Petitioner's remaining constitutional claims are equally unavailing. To begin, he provides no explanation for how Respondents' application of the PSF designation violated his rights under the Sixth Amendment; particularly, since the designation was applied in the course of the BOP's administrative process, and not as part of a criminal prosecution. In regard to Petitioner's due process claim, Congress has explicitly delegated the matter of prison classifications to the sound discretion of the BOP. As such, Petitioner has "no legitimate statutory or constitutional entitlement [to a particular classification] sufficient to invoke due process." *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *see also Slezak v. Evatt,* 21 F.3d 590, 594 (4th Cir. 1994) (holding that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status"); *and Wilks v. Mundt,* 25 F.App'x 492 (8th Cir. 2002) (unpublished) (holding that decisions regarding prison classification and eligibility

---

[6] To the extent Petitioner's claim is not one of retaliation, but instead is an allegation that the BOP directly interfered with his right to access the court, he must show an actual injury from the alleged interference; such as, the late filing of a document. *Freeman,* 2015 WL 3965822, at *9 (citing *Magee v. Waters,* 810 F,2d 451 (4th Cir.1987)). Petitioner has not asserted an actual injury or prejudice related to the alleged denial of access to the court.

for rehabilitative programs were within the discretion of the BOP; therefore, foreclosing a prisoner's statutory or constitutional entitlement to invoke a due process argument). Indeed, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). The undersigned **FINDS** that Petitioner has failed to assert any allegations that would sustain a plausible claim of Fifth and Sixth Amendment violations.

## IV. Proposal and Recommendation

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows:

1. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, including his request for counsel,[7] (ECF No. 1) be **DENIED**;

2. That this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United

---

[7] The Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, authorizes United States District Courts to appoint counsel to represent financially eligible individuals in habeas actions brought pursuant to 28 U.S.C. § 2241, "whenever the United States magistrate judge or the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). This standard is similar to the one applied in determining whether to appoint counsel in civil actions governed by 28 U.S.C. § 1915(e)(1), which states that the appointment of counsel rests within the sound discretion of the court. In other words, Petitioner has no constitutional right to counsel in this case. Whether counsel should be appointed depends upon several factors, including (1) the type and complexity of the case; (2) the ability of the litigant to adequately investigate and present his claim; (3) the likelihood of success on the merits of the application; and (4) the apparent need for an evidentiary hearing in order to resolve the case. *See, e.g Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984) (abrogated on other grounds by *Mallard v. United States Dist. Court*, 490 U.S. 296 (1989)); *Hoggard v. Purkett,* 29 F.3d 469 (8th Cir. 1994). In light of the undersigned's conclusion that Petitioner cannot succeed on the merits of his petition, he is not entitled to counsel.

States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and any counsel of record.

**FILED:** September 18, 2015

Cheryl A. Eifert
United States Magistrate Judge